### Catherine Horttman, Appellee, v. Illinois State Trust Company, Appellant.

1. PLEDGE—*misappropriation.* Where the owner of notes permits the same together with a mortgage as collateral security therefor, to be pledged by a third party as security for a loan of a certain amount, and a bank knowing the facts gives a greater loan than authorized by the owner, on receiving such security, and sells the same on default of payment for about one fourth its value, the owner is entitled to recover from the bank the loss sustained.

2. EVIDENCE—*conversations relative to transactions.* In a suit to recover for the value of collateral security given to the pledgee on a loan being made to a third party, evidence as to any conversation had between the pledgee and the third party receiving the loan, in the absence of the plaintiff, relative to such security, is inadmissible.

3. INSTRUCTIONS—*modification.* An instruction relative to the receipt of collateral security by the pledgee as security for a loan made to a third party, which ignores the question of the right to make a greater loan than authorized by the owner of such security, is properly modified to include such point where the same has been raised by the evidence in the case.

4. PLEDGEE—*credit for redeeming pledged property from master's sale.* Where the holder of a mortgage permits the same to-

gether with the notes for which it was given as security to be pledged as security for a loan to a third party, the pledgee, who has wrongfully sold the same and is being sued therefor, is not entitled to any credit against the owner of the mortgage for redeeming the mortgaged property from a master's sale where it was not done with the knowledge or consent of such owner, and where the property was of sufficient value to pay the mortgage debt in addition to the amount paid for such redemption.

5. DAMAGES—*when not excessive for wrongful sale of pledged securities.* A judgment of $3,000 against a pledgee, for the wrongful sale of securities, is not excessive where the owner had authorized but a $500 loan to a third party on such securities in which he had a $3,000 interest and on which two years' interest was due at the time of the judgment.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 31, 1912.

MAURICE V. JOYCE and A. B. GARRETT, for appellant.

WEBB & WEBB and LOUIS A. KLINGEL, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This suit was originally brought by appellee against the Illinois State Trust Company in replevin, to recover certain notes and a mortgage claimed by her, and later was changed to a case in trover, alleging the wrongful conversion of the property by said company, and seeking a recovery for the value thereof. Subsequently appellee took leave to amend and added appellant as a party defendant. At the conclusion of appellee's evidence, the court directed a verdict in favor of the Illinois State Trust Company, but refused to give such instruction in favor of appellant, and the case proceeded against the latter alone.

The jury returned a verdict against appellant for $3,000.00 and judgment was entered for that amount.

The following case is presented by the facts: On April 15, 1907, L. M. Jeffries, borrowed $3,000.00 from appellee, through a loan agent named F. W. Puderer.

As evidence of the loan he executed a principal note for said amount, together with six semiannual interest notes for $90.00 each, both principal and interest notes, bearing interest at the rate of six per cent. per annum from maturity, and also a mortgage on certain real estate in Denverside subdivision of East St. Louis, Illinois. Jeffries was a frequent visitor at the home of appellee and, according to the testimony, was then "keeping company" with her daughter, Mathilda Horttman. Early in the spring of 1908, Jeffries applied to F. T. Joyner, vice-president and cashier of appellant, at the bank for a loan of $500.00, proposing to secure the same by good collateral and stating the collateral would be a mortgage which belonged to a lady friend. Sometime afterwards, Jeffries brought the $3,000.00 mortgage and the notes secured thereby to the bank. Accompanying the papers, which were left with Joyner, was an abstract of title to the property covered by the mortgage, and upon examining the same he found there were several mechanics' liens, amounting to several hundred dollars, against the premises, and that the same had been sold by the master in chancery to satisfy the liens. A few days later, on April 20, 1908, he and Mathilda Horttman went to the bank to close the loan, when Joyner told them that the liens must be cleaned up before the loan could be completed. After considerable discussion it was arranged that the bank should make the loan for $1,000.00, instead of $500.00, which it did, taking Jeffries' note therefor and a collateral agreement in writing signed by him and Mathilda Horttman, pledging the $3,000.00 mortgage and notes. At that time appellee had collected two of the $90.00 interest notes, leaving unpaid four interest notes in addition to the $3,000.00 principal note. Of the $1,000.00 so borrowed, appellant retained $384.53, which it used to redeem the property from the master's sale and paid the balance to Jeffries. Sometime later the note was increased to $1,500.00 and the collateral again pledged

in the same manner by Jeffries and Mathilda Horttman to secure the same. The Jeffries note for $1,500.00 was renewed in like manner several times, the interest each time being added to the principal and the last note given by him, being dated June 1, 1909, for the sum of $1,588.00. The bank was unable to collect this note and, therefore, on November 1, 1909, it sold the collateral for $1,631.00 to F. W. Kraft to satisfy the debt and expenses attending the sale. Two days later, this suit was commenced by appellee. It is not disputed that the $3,000 mortgage and the notes secured thereby belonged to appellee and that she authorized Jeffries to pledge the same to appellant for a loan of $500.00.

Appellant insists here that the verdict was against the weight of the evidence, that the court erred in rejecting certain evidence offered by it, that the court improperly modified two instructions offered by it, and that the verdict was excessive.

The principal question of fact in controversy was as to whether appellant or its officers knew that Mathilda Horttman was not the owner of the notes and mortgage deposited as collateral. Joyner, the cashier, and Jeffries, both swore that there was nothing said at the time the original loan was negotiated tending to show that she was not in fact the owner of the collateral. While on the other hand Mathilda Horttman testified that she told Joyner, when it was proposed to make the loan $1,000.00 instead of $500.00, that she was not the owner of the $3,000.00 note and mortgage, but that her mother was; that her mother did not know anything about it, and that she had only agreed to let Jeffries take it for $500.00, and that Joyner replied, "Oh, that is all right; that will be paid and Mr. Jeffries will take care of that, your mother won't need to know anything about it." Another witness, Puderer, who made the loan on the real estate for appellee to Jeffries, testified that Joyner asked him about the loan and he told him that he had made it to ap-

pellee; that he requested Joyner to hold up the loan a short time until he could find out how Jeffries got possession of the paper, and consent was given for the delay; that he consulted appellee and afterwards told Joyner that it was all right that Jeffries was to have $500.00 on the papers. Another witness testified to facts tending to impeach the testimony of Jeffries, his statement being that Jeffries told him that both he and Miss Horttman told Joyner that the papers belonged to appellee. Taking all this evidence in consideration, together with the circumstances of the case, the preponderance of the evidence would appear to show that the cashier, Joyner, knew at the time he made the loan of $1,000.00, that the collateral did not belong to Mathilda Horttman, and that Jeffries was only authorized to borrow $500.00 on it.

A preponderance of the evidence also showed that while the collateral was sold for $1,631.00, the property described in the mortgage, which secured the $3,000.00 loan, was worth from $3,500.00 to $4,500.00. Upon the facts as a whole, appellee was entitled to recover.

Joyner testified in speaking of Jeffries' application for the loan, "I asked him why he did not sell the mortgage and he said it did not belong to him; that it belonged to a lady friend of his." Counsel for appellee objected to any further conversation between Joyner and Jeffries at that time, as it was in the absence of appellee and the court sustained the objection. This objection was properly sustained, as it appeared that Joyner was informed that Jeffries did not own the mortgage and that he was at that time only seeking to borrow the $500.00, which he had been authorized by appellee to borrow on the collateral. Objections of appellee to certain other statements of Jeffries to Joyner, at the time the loan was increased to $1,500.00, and at the time when Miss Horttman was present with them when the loan was negotiated, were sustained by the court. We are inclined to the opinion that these statements were, under the circumstances of

this case, properly refused admittance, but as a matter of fact, the substance of them appears to have been made known to the jury in the admitted testimony of the various witnesses.

No instructions were given for appellee. Five were offered for appellant, all of which were given, but instructions Nos. 2 and 3 of those given, were modified by the court and of these modifications appellant complains. Instruction No. 2 as modified was as follows, the modification being shown by the italics:

"The court instructs the jury that if you believe from the evidence, that the plaintiff herein permitted any person to take possession of the note in question, for the purpose of using the same, as collateral security, for a loan, then in such case, the person accepting such note as such security, *without notice of any limitation of the use of such paper,* would have the right to hold the same for whatever sum was loaned upon such security. And if you believe from the weight of the evidence that the defendant obtained the note in question, as collateral security for a loan made under such conditions, and, pursuant to a power of sale given at the time such loan was made, sold said note and applied the proceeds thereof in payment of said loan, then the plaintiff cannot recover of the defendant for said note and your verdict should be for the defendant. *Unless you further believe from the evidence that at the time of taking such collateral, defendant had notice that Jeffries was authorized to pledge the same for the sum of five hundred dollars only.*"

These modifications appear to us to have been not only proper but necessary to make the instruction a valid one under the proofs in this case. If appellant's cashier had notice at the time the loan was made that Jeffries was authorized to pledge the same for only the sum of $500.00, then appellant had no right to take the same as security for a loan of $1,000.00 as it did in the first instance, nor to take it as collateral security for a note of $1,500.00 as was subsequently done

and to sell such collateral to pay said debt. What is above said will apply with equal force to appellant's criticism of the modification of its third instruction.

Appellant insists that it should have had credit for the $384.53 paid by it to redeem the mortgaged property from the master's sale, as the same was necessary to protect the security. This payment was a voluntary act on the part of appellant, without consideration and not made at the request or with the knowledge of appellee. Under such circumstances, appellant has no legal right to recover the same from appellee. (30 Cyc. 1298.) But apart from the general rule of law governing such instructions, appellant should not be permitted credit for the amount paid, as against appellee's mortgage, as it made this payment with the knowledge, consent and really for the benefit of Jeffries, the owner, and the mortgaged premises were of sufficient value, as shown by the proofs, to not only pay the mortgage debt of appellee, but the additional amount paid by appellant to redeem them from said sale. Nor was the judgment in this case excessive. The date of the note and mortgage was April 15, 1907, and appellee had collected the interest for only one year. She was entitled to recover the $3,000.00 principal, less the $500.00 which she had authorized Jeffries to borrow on the collateral, from April 15, 1908, to the date of the verdict, September 25, 1911. The interest was payable semiannually and for two years was evidenced by interest notes, which bore interest from maturity. The principal and interest together would fully amount to the sum of $3,000.00, for which appellee received judgment. The judgment of the court below will be affirmed.

*Affirmed.*